**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Thurston, | No. CV-23-01097-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Western Alliance Bank, et al., | |
| Defendants. | |

Plaintiff Julie Thurston accuses Defendants Western Alliance Bank ("Western Alliance") and Michelle Lance of violating the Family and Medical Leave Act ("FMLA") and the Equal Pay Act ("EPA").[1] Before the Court is Defendants' partial motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which is fully briefed. (Docs. 14, 17, 18.) The Court heard oral argument on February 22, 2024. For the following reasons, Defendants' motion is granted in part.

**I.    Background**

Thurston began working for Western Alliance as a Senior Product Manager in December 2019. (Doc. 13 at ¶ 12.) Around March 2020, Lance became Thurston's direct supervisor. (*Id.* at ¶ 17.)

Shortly after beginning her employment, Thurston learned that female Product Analysts were on a lower pay scale than their male peers. (*Id.* at ¶ 25.) Though not herself a Product Analyst, this discovery led Thurston to believe that she might have been

---

[1] Thurston also alleges a state law claim of intentional infliction of emotional distress against Western Alliance, which Western Alliance has not moved to dismiss.

underpaid compared to three male Senior Managers[2] who performed similar work to her. (*Id.* at ¶¶ 27–29.)

Before Western Alliance hired her, Thurston had been diagnosed with non-celiac gluten intolerance. (*Id.* at ¶¶ 21–22.) By May 2020, Thurston began to feel that she was not recovering from her diagnosis and saw her physician. (*Id.* at ¶¶ 22–23.) Thurston notified Defendants of her medical issue because she needed to take time off. (*Id.* at ¶ 24.) In July, Thurston returned to her physician and was diagnosed with uterine fibroids. (*Id.* at ¶¶ 35–37.) Throughout these months, Thurston took time off pursuant to Western Alliance's Paid Time Off ("PTO") policy. (*Id.* at ¶¶ 38, 43.) Western Alliance was aware Thurston's requests for time off were related to her medical issues because she informed Lance of the symptoms and updated Lance about her health problems. (*Id.* at ¶ 46.) Western Alliance generally granted Thurston's accommodation requests to work from home during this time. (*Id.* at ¶ 45.)

In August, Thurston received a positive mid-year performance review from Western Alliance. (*Id.* at ¶ 39.) Lance stated that Thurston was "instrumental" and "a great asset to the team" and expressed that Western Alliance was pleased with how Thurston was assisting her colleagues on projects. (*Id.* at ¶¶ 39–41.) Though aware Thurston's medical issues sometimes required accommodations, Lance indicated in Thurston's mid-year review that Thurston was always available to help her colleagues. (*Id.* at ¶¶ 49–51.) Thurston notified Defendants around this time, however, that she needed more support from someone with knowledge about consumer accounts. (*Id.* at ¶ 42.)

In late August, Thurston learned she would need surgery and scheduled it for October 2020. (*Id.* at ¶¶ 47–48.) Thurston used two weeks of PTO to undergo and recover from surgery before returning to work in November. (*Id.* at ¶ 52). Upon returning, Thurston discovered that Lance had created a new position in consumer accounts, stripping Thurston of her duties. (*Id.* at ¶ 53.) After she returned, Thurston continued to request remote work and use her PTO to accommodate her medical issues. (*Id.* at ¶¶ 55–56, 60, 69.) During this

---

[2] At oral argument, Thurston clarified that the Senior Managers are Senior Product Managers, and Defendants did not contest this assertion.

time, Defendants did not notify Thurston that she could use intermittent leave under the FMLA. (*Id.* at ¶¶ 57, 60, 69.)

In February 2021, Lance demoted Thurston from Senior Product Manager to Product Manager. (*Id.* at ¶ 66.) Lance also began to complain Thurston was not working enough despite knowing Thurston was working on less visible projects. (*Id.* at ¶¶ 71–72.) In March, Thurston scheduled an immediate appointment with her physician after a negative reaction to new medicine. (*Id.* at ¶¶ 75–76.) In late April, Thurston was diagnosed with polycystic ovarian syndrome ("PCOS"). (*Id.* at ¶ 77.) Within a month of the diagnosis, Lance prepared and presented Thurston with a Performance Improvement Plan ("PIP"). (*Id.* at ¶¶ 79–80.) The PIP stated that Thurston relied on her colleagues too much, had missed meetings, failed to properly record her PTO, and also reprimanded Thurston for making so many requests to work from home. (*Id.* at ¶¶ 83–86.) Defendants also presented Thurston with a list of issues to be addressed by June 14, 2021. (*Id.* at ¶ 90.) Lance scheduled a follow-up meeting for June 14 to assess Thurston's progress on these issues. (*Id.* at ¶ 96.)

At the end of the initial meeting regarding the PIP, Defendants informed Thurston for the first time that she could use intermittent leave under the FMLA. (*Id.* at ¶ 92.) Thurston applied for FMLA leave and was approved for intermittent leave on June 4. (*Id.* at ¶ 93.) Prior to June 14, Defendants postponed the follow-up PIP meeting without rescheduling a date. (*Id.* at ¶ 98.) Thurston emailed a detailed report of everything she had accomplished to show she had satisfied the goals of the PIP. (*Id.* at ¶ 98.)

On June 18, 2021, two weeks after Thurston was approved for FMLA leave, Defendants terminated her employment. (*Id.* at ¶¶ 95, 100–01.) When Thurston mentioned delivering on everything in the PIP, Lance, who made the termination decision, stated it was "too little too late." (*Id.* at ¶¶ 102–03.)

Thurston filed this action on June 15, 2023 (Doc. 1), and an amended complaint on October 11 (Doc. 13). Thurston's amended complaint alleges, in pertinent part, that Defendants "intentionally and willfully interfered with her right to take leave by failing to

notify her of her benefits under the FMLA, . . . discouraging her from taking leave under the FMLA, and ultimate[ly] terminating her employment just two weeks after she had been approved for leave under the FMLA[.]" (*Id.* at ¶ 111.) Thurston also alleges Western Alliance "willful[ly] and/or reckless[ly]" paid "female employees less than male employees for equal work" in "violation of the . . . the EPA." (*Id.* at ¶¶ 131–32.)

## II. Legal Standard

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law[.]" *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Court does not accept "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal of a complaint, or any claim within it, may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. Analysis

Defendants argue that Thurston's amended complaint fails to plausibly allege: (1) a violation of the EPA; (2) that Defendants acted willfully; and (3) that Lance is an employer within the meaning of the FMLA.[3] (Doc. 14 at 6–14.). The Court addresses each argument in turn.

---

[3] Defendants also move to dismiss Thurston's FMLA retaliation claim. Thurston, in her response, agrees that her retaliation claim is subsumed within the broader umbrella of an FMLA interference claim. She has no objection to dismissing the retaliation claim provided that the factual allegations associated with that claim remain as part of her interference claim. Accordingly, the Court will dismiss Thurston's FMLA retaliation claim, but will consider those factual allegations when assessing Defendants' arguments regarding Thurston's interference claim.

**A. EPA**

To plead a claim under the EPA, a plaintiff must allege that employees of the opposite sex were plausibly paid different wages for equal work. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999). Jobs are equal when they require "equal skill, effort and responsibility, and [they] are performed under similar working conditions." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988) (quotations and citation omitted). A plaintiff must plead only that the jobs are substantially equal, not identical. *Stanley*, 178 F.3d at 1074.

Thurston's amended complaint does not sufficiently allege that she was paid less for equal work. Thurston alleges on information and belief that male Senior Managers were paid at market rate, while she was paid below market rate for substantially similar work. (Doc. 13 at ¶ 28.) Courts permit information-and-belief pleading when the relevant facts are known only to the defendant, or when the belief is a plausible inference drawn from known facts. *See Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017). Neither circumstance applies here. Thurston's pay and comparable market rate for her position are not facts solely within the control of Western Alliance and could have been alleged in the amended complaint. Nor does Thurston allege facts supporting a plausible inference that she was paid less than male Senior Managers. The only factual basis for this allegation is that female *Product Analysts* were being paid on a lower pay scale less than male *Product Analysts*. (Doc. 13 at ¶ 25.) Thurston argues this creates a reasonable inference that her position also was on a different pay scale, but Thurston was not a Product Analyst. The Court disagrees that differential pay among Product Analysts permits a reasonable inference that differential pay existed across the board, and Thurston fails to plead any other facts to support this inference. What's more, as written, Thurston pleads only that she believes she *may* have been be paid less than her male counterparts. (*Id.* at ¶ 27.) At most, this amounts to a mere *possibility* of a pay difference, and a mere possibility does not satisfy federal pleading standards. *See Twombly*, 550 U.S. at 546.

Thurston further does not allege enough facts to support the claim that she performed substantially equal work as the three male Senior Managers. Thurston alleges with specificity that she and the three male Senior Managers share substantially similar responsibilities, including managing products, performing necessary audits, and monitoring relevant regulatory matters. (Doc. 13 at ¶ 28.) But when it comes to skills and experience, Thurston's amended complaint contains only a rote recitation of the elements. (*Id.* at ¶ 29 ("All of the Senior Managers had similar skillset and experience[.]").) Skill includes consideration of a variety of factors to determine whether jobs have similar skillset including "experience, training, education, and ability." 29 C.F.R. § 1620.15(a); *see also Forsberg*, 840 F. 2d at 1415. Although Thurston is not required to exhaustively allege facts for all these factors, she must allege more than an unsupported conclusion that she and the male Senior Managers had the same skillset and experience. The amended complaint is devoid of any facts to support that Thurston had similar education, training, or experience as the male Senior Managers. Indeed, as currently pled, it is unclear what skills, education, or experience Thurston and the male Senior Managers shared.

For these reasons, Thurston's EPA claim is dismissed.

**B. Willfulness**[4]

Claims for violations of the FMLA are typically governed by a two-year statute of limitations. 29 U.S.C. § 2617(c). However, claims based on willful violations of the FMLA are governed by a three-year limitations period. *Id.* A violation is willful if an employer either knew or showed reckless disregard for whether its conduct was prohibited. *See Olson v. United States ex rel. Dept. of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020).

Defendants contend that the two-year statute of limitations should govern, rendering untimely any portions of Thurston's FMLA claim predicated on adverse actions prior to that period. (Doc. 14 at 10–11.) Ordinarily, when a motion to dismiss is based on untimeliness, the motion "can be granted only if the assertions of the complaint, read with

---

[4] Defendants move to dismiss the allegations that they willfully violated the FMLA and the EPA. Because the Court dismisses the EPA claim on other grounds, it limits its analysis of willfulness to the FMLA claim.

- 6 -

the required liberality, would not permit the plaintiff to prove that the statute [of limitations] has not run." *United States v. Boeing Co.*, No. C22-0485JLR, 2023 WL 3075867, at * 5 (W.D. Wash., 2023) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). A claim will be dismissed as time-barred only if the untimeliness appears beyond doubt on the face of the complaint. *Ploof v. Arizona*, No. 22-15061, 2023 WL 2929314, at *1 (9th Cir. 2023).

The Court finds that untimeliness does not appear beyond doubt on the face of the complaint. Thurston alleges that Defendants knew she needed FMLA leave and "intentionally and willfully interfered with her right to take leave." (Doc. 13 at ¶ 111). For support, Thurston alleges that Defendants had knowledge of Thurston's condition and failed to notify her of her right to take FMLA leave until after providing her with a PIP; that the PIP was pre-textual and incorrectly complained Thurston was not working enough; and that because of prior retaliation and the PIP, Defendants discouraged her from taking intermittent leave and terminated her two weeks after being approved for FMLA leave without an opportunity to discuss the issues addressed in the PIP. (*Id.* at ¶¶ 60, 74, 78, 84, 95, 97–99, 104, 106–07). These factual allegations distinguish Thurston's complaint from the conclusory complaints found deficient by this Court in cases like *Gage v. Ariz. Bd. of Regents*, 643 F. Supp. 3d 1013, 1021 (D. Ariz. 2022), upon which Defendants rely.

For these reasons, Defendants' motion to dismiss as untimely any portions of Thurston's FMLA claim predicated on adverse actions occurring outside the two-year, rather than three-year, limitations period is denied.

### C. Lance's Liability Under the FMLA

The Ninth Circuit has not squarely addressed whether an individual may be liable under the FMLA, but in dicta the court has signaled its agreement with other circuits that "some supervisory employees can be sued as employers under the FMLA," while cautioning that "determining which supervisors qualify is not a straightforward matter." *Hibbs v. Dept. of Hum. Res*, 273 F.3d 844, 872 (9th Cir. 2001). Because the FMLA and FLSA define "employer" in the same way, courts look to FLSA caselaw for guidance. *See*,

*e.g.*, *Craft v. Burris*, CV 16-166-BLG-TJC, 2017 WL 4891520, at *5 (D. Mont. Oct. 30, 2017); *Johnson v. Golden Empire Transit Dist.*, No. 1:14-cv-001841-JLT, 2016 WL 3999996, at *8 (E.D. Cal. July 25, 2016).

Using the FLSA's framework, "the Court employs [an] 'economic reality' test to determine whether an individual is an employer under the FMLA[.]" *Johnson*, 2016 WL 3999996, at *8. In doing so, the Court considers factors such as the supervisor's degree of authority and control over subordinates and the economic control over the employment relationship. *Hibbs*, 273 F.3d at 872; *see also Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). The term "employer" is interpreted broadly to effectuate the statute's remedial purpose. *See Boucher*, 572 F.3d at 1090–91.

Thurston pleads sufficient facts to survive a Rule 12(b)(6) motion. She alleges that Lance was her supervisor, took part in her performance review, and had authority to create new positions, demote and terminate employees, and create and enforce PIPs. (Doc. 13 at ¶¶ 17, 39–46, 53, 67, 79–81, 84–91, 95–102.) Together, these facts make it plausible that Lance had sufficient control over Thurston's job to constitute her an employer for purposes of the FMLA. Defendants' motion to dismiss the FMLA claim against Lance is denied.

### D. Leave to Amend

The factual defects in Thurston's EPA claim potentially are curable, and Thurston's counsel indicated during oral argument that she could allege additional facts to support that claim. Thurston has not sought leave to amend, let alone in a manner that complies with Local Rule of Civil Procedure 15.1(a) or this Court's standard order regarding Rule 12 motions (Doc. 6). If Thurston believes she can cure the deficiencies identified in this order, she may file a motion for leave to amend her complaint that complies with Local Rule 15.1(a).

/ / /

/ / /

/ / /

**IT IS ORDERED** that Defendants' partial motion to dismiss (Doc. 14) is **GRANTED IN PART** as stated herein.

Dated this 6th day of March, 2024.

Douglas L. Rayes
United States District Judge